LAW ENFORCEMENT — COUNTY — CITY A city and county may, under 74 O.S. 1101 [74-1101] (1971), et seq., known as the Interlocal Cooperation Act, contract to provide police services. The County could use said fee to hire additional personnel for its sheriff as contemplated under the statutes, but could not increase their salaries in contravention of the same. The Department of Public Safety, as an agency of the State of Oklahoma, could contract with an Oklahoma county and/or Oklahoma city if such contract is compatible with the laws of the state and conforms to the Interlocal Cooperation Act. The Attorney General is in receipt of your opinion request wherein you ask, in effect, the following questions: 1. May a city and its county reach a contractual agreement under the Interlocal Cooperation Act for the county sheriff to provide specified law enforcement services to the city for a set fee while both agencies retain the power of self-determination and home rule. 2. Could the county take this fee from the city and use same to hire additional personnel for its sheriff and/or increase their salaries so as to compensate them for their increased responsibilities or would additional state legislation be needed? 3. May the State of Oklahoma contract with an Oklahoma county and/or Oklahoma city under the Interlocal Cooperation Act, more specifically with the State of Oklahoma Highway Patrol, for the services of a "resident trooper" whose mission would be to furnish basic law enforcement services on a part-time or full-time basis to the requesting municipality and/or county? 4. Could a fee paid to the Oklahoma Highway Patrol by a county and/or city be used by the Patrol or would same be required to be deposited into the General Fund? If under current law it is required to be deposited into the General Fund, could valid legislation be introduced setting up a special revolving fund for the purpose of the Patrol receiving and expending such fees? 5. Are there any unusual fiscal aspects to arranging or ad ministering county-to-city or state-to-local contracts? In order to better understand the scope of the questions it is necessary to examine the Interlocal Cooperation Act which forms a basis for such agreements. The Interlocal Cooperation Act is set forth in 74 O.S. 1101 [74-1101] (1971), et seq. Section 1001 sets forth its purpose as follows: "It is the purpose of this act to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities." Section 74 O.S. 1003 [74-1003] is the definitional section which states: "(a) For the purposes of this act, the term 'public agency' shall mean any political subdivision of this state; any agency of the state government or of the United States; and any political subdivision of another state. "(b) The term 'state' shall mean a state of the United States and the District of Columbia." Section 74 O.S. 1004 [74-1004] authorizes agreements in the following manner: "(a) Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state, and jointly with any public agency of any other state or of the United States to the extent that the laws of such other state or of the United States permit such joint exercise or enjoyment. Any agency of the state government when acting jointly with any public agency may exercise and enjoy all of the powers, privileges and authority conferred by this act upon a public agency. "(b) Any two or more public agencies may enter into agreements with one another for a joint or cooperative action pursuant to the provisions of this act. "Appropriate action by ordinance, resolution or otherwise pursuant to law of the governing bodies of the participating public agencies shall be necessary before any such agreement may enter into force. "(f) Every agreement made hereunder shall, prior to and as a condition precedent to its entry into force, be submitted to the Attorney General who shall determine whether the agreement is in proper form and compatible with the laws of this state . . . ." It is clear, in light of the above quoted statutory provisions, that the scope of such agreements are very broad, but all such agreements must be compatible with the laws of the State of Oklahoma. As to your first question, a city and a county may enter into an agreement under the Interlocal Cooperation Act because both entities are "political subdivisions" of this state, as those terms are defined in Section 1003 of the Interlocal Cooperation Act and the Statutes of the State of Oklahoma. Whether the specific services provided are compatible with the laws of the State of Oklahoma is an assumption which must be made because those services have not been enumerated in your question. The question of a "set fee" for the county sheriff raises an additional question, because 19 O.S. 180.67 [19-180.67], states in part: "(a) It is hereby declared to be the intent of the Legislature that this act shall be the comprehensive salary code for all counties of the state and no county officer in groups 'A' or 'B', or their assistants, deputies, or other employees of whatever title designated, shall receive any salary raises except as provided in this act, except that the county superintendent of schools may receive extra compensation as provided by the Oklahoma School Code." Inasmuch as the salary of said county sheriff is set in terms of a minimum and maximum by the Legislature the agreements may not provide for additional compensation beyond the scope of said statute. If, however, the agreement falls within the limits set forth by statute, an aspect not considered in this opinion, and the salary does not contravene Title 19 of the Oklahoma Statutes, then said agreement would be in proper form. As to your second question, part of which has been answered in the first question in that the salary of the county sheriff could not be increased because the same is prohibited by statute, the county could hire additional personnel as provided in 19 O.S. 180.64 [19-180.64] (1971), the salaries of which could be paid for under said agreement. As to your third question, since the term "public agency" does not include the state as a separate entity, and specifically defines what is meant by a "public agency" the "state" would not fall within the provisions of this act. However, the Department of Public Safety, as an agency of the State of Oklahoma, would fall under the provisions of this act as the Department falls within the definition of "public agency" as defined in Section 1003 of this act. With reference to your fourth question, the salaries of Highway Patrol officers and officials are set forth by statute in terms of a maximum and minimum and, therefore, an agreement could not contravene these statutes. If the agreement contemplates funds to be paid directly to the Highway Patrol then, in the absence of a special fund, as contemplated in your letter, said payments would normally be paid into the General Fund. Your fifth question is answered as follows. Section 74 O.S. 1004 [74-1004](c) of the Interlocal Cooperation Act sets forth what is required in agreements entered into pursuant to the act. Numerical 4 of subsection (c) states that the manner of financing the joint or cooperative undertaking and the establishing and maintaining of a budget therefor must be included in the agreement. Other than this particular reference there is no specific aspect contemplated under the act that would have to be included in any such agreements. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Question 1 should be answered in the affirmative in part in that a city and county may, under 74 O.S. 1101 [74-1101] (1971), et seq., known as the Interlocal Cooperation Act, contract to provide police services. Question 2 should also be answered in the affirmative in part in that the county could use said fee to hire additional personnel for its sheriff as contemplated under the statutes, but could not increase their salaries in contravention of the same. Question 3 should be answered in the affirmative in that the Department of Public Safety, as an agency of the State of Oklahoma, could contract with an Oklahoma county and/or Oklahoma city if such contract is compatible with the laws of the state and conforms to the Interlocal Cooperation Act. Questions 4 and 5 are not capable of being answered because specific aspects of the contractual agreements proposed have not been set out in detail. (Donald B. Nevard)